George M. Kraw (California Bar No. 71551)
gkraw@kraw.com
Katherine McDonough (California Bar No. 241426)
kmcdonough@kraw.com
Jessica M. Alvarez (California Bar No. 311575)
jalvarez@kraw.com
Kraw Law Group, APC
605 Ellis Street, Suite 200
Mountain View, California 94043
Telephone: 650-314-7800
Facsimile: 650-314-7899

Attorneys for:
Producer-Writers Guild of America Pension Plan; Board of Directors of the Producer-Writers Guild of America Pension Plan; Writers' Guild-Industry Health Fund; and Board of Trustees of the Writers' Guild-Industry Health Fund

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
(WESTERN DIVISION)

| | |
|---|---|
| PRODUCER-WRITERS GUILD OF AMERICA PENSION PLAN; BOARD OF DIRECTORS OF THE PRODUCER-WRITERS GUILD OF AMERICA PENSION PLAN,<br>And,<br><br>WRITERS' GUILD-INDUSTRY HEALTH FUND; BOARD OF TRUSTEES OF THE WRITERS' GUILD-INDUSTRY HEALTH FUND,<br>Plaintiffs,<br>v.<br>NEWIRTH, LLC, an Idaho Limited Liability Company,<br>And,<br><br>WILL DREAMLY ENTERTAINMENT, LLC, an Idaho Limited Liability Company,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

1. This action has been brought to collect unpaid contributions owed to the Plaintiffs. This action arises under Section 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") 29 U.S.C. § 1001, *et seq.*, under sections 1132 and 1145. This action also arises under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction of this action under the terms of Section 502(a), (e) and (g) of ERISA, 29 U.S.C. §1132(a), (e) and (g), 29 U.S.C. §185 and 28 U.S.C. § 1331. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant 28 U.S.C. § 1367(a) because the state claims arise from the same case or controversy wherein the district court has original jurisdiction over the civil action pursuant to 28 U.S.C § 1331. Specifically, this action arises out of Plaintiffs' allegations that Defendant failed to pay fringe benefit contributions to the respective Benefit Plans, in violation of the governing Collective Bargaining Agreements, Trust Agreements, and Guarantee Agreement.

3. This Court has venue over this action pursuant to Section 502(e) of ERISA, 29 U.S.C. §1132(e), in that this is the district where the Plaintiffs Producer-Writers Guild of America Pension Plan and Writers' Guild-Industry Health Fund (hereinafter separately referred to as "Pension Plan" and "Health Fund", respectively; collectively referred to as "Benefit Plans") are administered and where the breaches described herein took place.

**PARTIES**

4. Plaintiffs are the PRODUCER-WRITERS GUILD OF AMERICA PENSION PLAN ("Pension Plan") the WRITERS' GUILD-INDUSTRY HEALTH FUND ("Health Fund," collectively the "Benefit Plans"), the BOARD OF DIRECTORS OF THE PRODUCER-WRITERS GUILD OF AMERICA PENSION PLAN and the BOARD OF TRUSTEES OF THE WRITERS GUILD-

INDUSTRY HEALTH FUND (collectively, "Board of Trustees").

5. The Benefit Plans are employee benefit plans within the meaning of Sections 3(1), 3(2), and 3(3) of ERISA, 29 U.S.C. §1002 (1), (2), and (3), and are maintained for the purpose of providing retirement, health and welfare, and related benefits to eligible participants.

6. The Benefit Plans receive contributions from numerous employers pursuant to Collective Bargaining Agreements between employers and Writers Guild of America, West, and Writers Guild of America, East, and therefore, are multiemployer plans under Section 3(37) of ERISA, 29 U.S.C. §1002(37), and 29 U.S.C. § 1301(a)(3).

7. The Board of Trustees of the Producer-Writers Guild of America Pension Plan and the Board of Trustees of the Writers' Guild-Industry Health Fund") are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

8. The Benefit Plans and Boards of Trustees maintain their principal place of business at 2900 West Alameda Avenue, Suite 1100, Burbank, California.

9. The Benefit Plans and Board of Trustees bring this action on behalf of themselves and on behalf of participants and beneficiaries in the Benefit Plans to recover benefits due, pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.

10. Defendant Newirth, LLC (hereinafter referred to as "Newirth") is, upon information and belief, a private limited liability company based in Idaho. Newirth is in the business of entertainment production.

11. Defendant Newirth is an employer in an industry affecting commerce within the meaning of Sections 3(5), 3(11), and 3(12) of ERISA, 29 U.S.C. §1002(5), (11), and (12), and Section 2(2) of the LMRA, 29 U.S.C. §152(5).

12. Newirth is a signatory employer to the Minimum Basic Agreement ("MBA") which provides for payment of contributions to the Benefit Plans.

/ / /

13. As a signatory employer to MBA, Newirth is bound to the provisions of the MBA and the respective Trust Agreements for the Pension Plan and Health Fund ("Trust Agreements") that created the Benefit Plans.

14. On or about May 7, 2021, Andreas John signed the Letter of Adherence to the 2020 WGA theatrical and Television Basic Agreement, making Newirth signatory to the MBA. Attached as **Exhibit A** is a true and accurate copy of the Letter of Adherence.

15. Defendant Will Dreamly Entertainment, LLC guaranteed the benefit contributions owed by Newirth. Attached as **Exhibit B** is a true and accurate copy of the Guarantee Agreement signed on May 10, 2020.

## FACTUAL ALLEGATIONS

16. Newirth entered into the MBA with the Writers Guild of America East and Writers Guild of America West. The MBA established the terms and conditions of writers hired to perform covered writing services performed by employees of Newirth. *See* **Exhibit A**.

17. Newirth is required to make contributions to the Benefit Plans for covered writing services performed by its bargaining unit employees in the amount and manner specified in the MBA and Trust Agreements.

18. Pursuant to the Trust Agreements and MBA, the contributions are "due" within ten (10) business days after close of the week (which closes on Saturday) in which the compensation is paid or due to the writer(s). Contributions are "delinquent" if the Trusts have not received the contributions within thirty (30) calendar days from the "due" date.

19. Upon information and belief, Newirth employed at least one (1) employee covered by the MBA for at least the period of June 1, 2021 through June 20, 2021. Specifically, Newirth employed writer George Strayton for the project "Newirth-one-hour scripted series" (hereinafter, referred to as the "Project").

20. Newirth failed to timely submit its contribution for covered writing services performed under the terms of the MBA by Mr. Strayton, for the period of at least June 1, 2021 through June 30, 2021 for the Project.

21. Newirth has combined outstanding contributions to both the Pension Plan and the Health Fund. Newirth owes at least the sum of $27,718.52 to the Pension Plan and at least the sum of $12,958.00 to the Health Fund in delinquent contributions.

22. On March 22, 2022, the Benefit Plans and Newirth agreed to a payment plan for the outstanding contributions.

23. The Benefit Plans made multiple attempts to contact Newirth and Newirth's counsel, requesting immediate payment of the contributions. However, despite e-mail communications by the Benefit Plans, requests for wire-transfer confirmations, and ample opportunity to pay amounts owed, to date, Newirth has not paid delinquent contributions.

24. Due to Newirth's repeated failure to make timely payments, there is now an additional amount owed for liquidated damages and accrued interest.

25. Specifically, per the Plan Documents, Newirth is required to pay an interest rate of 10% per annum and liquidated damages of 20% of delinquent contribution.

26. Additionally, under the terms of the Trust Agreements, an employer who fails to make timely contributions to the Benefit Plans for employee fringe benefits is liable to the Benefit Plans for all unpaid contributions, interest, and attorney's fees and collection costs. See also, 29 U.S.C. §1132(g).

27. Pursuant to 29 U.S.C. §1132(g)(2), Plaintiffs are further entitled to an amount equal to the greater of:

(a) double interest; or

(b) interest plus liquidated damages.

28. As of June 11, 2024, Newirth owes at least the sum of $20,250.00 in

delinquent contributions, $4,050.00 in liquidated damages, and $3,418.52 in interest to the Pension Plan.

29. As of June 11, 2024, Newirth owes at least the sum of $7,000.00 in delinquent contributions, $1,400.00 in liquidated damages, and $4,558.00 in interest to the Health Plan.

30. Interest continues to accrue at the rate of 10% per annum.

## STATEMENT OF CLAIMS

### FIRST CLAIM

**Failure to Make Contractually Required Contributions to Multi-Employer Plan Under the Employment Retirement Income Security Act (29 U.S.C. §§ 1132 and 1145)**

31. Plaintiffs hereby incorporate by reference each allegation contained in Paragraphs 1 through 30 as fully set forth herein.

32. This is an action to collect unpaid contributions, liquidated damages, and interest found owing to a multi-employer benefit plan pursuant to the terms of the MBA and the Trust Agreements.

33. Defendants' failure to pay contributions constitute a failure of an employer to make contractually required contributions to a multi-employer plan pursuant to Section 515 of ERISA, 29 U.S.C. § 1145.

34. Plaintiffs are entitled to judgment for all unpaid contributions, liquidated damages, prejudgment interest, and reasonable attorney's fees and costs pursuant to 29 U.S.C. §1132(g)(2).

### SECOND CLAIM

**Breach of a Written Agreement**

35. Plaintiffs hereby incorporate by reference each allegation contained in Paragraphs 1 through 34 as fully set forth herein.

36. This is an action to enforce a written Collective Bargaining Agreement and the Trust Agreements, and guarantee agreement.

37. Plaintiffs are entitled to pursue this claim as a third-party beneficiary to the MBA and Trust Agreements.

38. Defendants' failure to pay contributions owed to the Benefit Plans, breached the MBA, Trust Agreements, and Guarantee Agreement to the detriment of the Plaintiffs. Plaintiffs are entitled to contributions, liquidated damages, interest, and attorneys' fees and costs pursuant to the MBA and Trust Agreements.

## PRAYER

WHEREFORE, Plaintiffs respectfully request this Court:

A. Enter a judgment declaring that Defendants have a contractual obligation to make payments to the Benefit Plans (a) requiring contributions to fund benefits in an amount to be proven; (b) requiring liquidated damages and interest payments in an amount to be proven; and (c) requiring the payment of reasonable attorneys' fees and costs of litigation pursuant to the Minimum Basic Agreement, the Trust Agreements and ERISA.

B. Other such legal and equitable relief as the Court may deem just and equitable.

Dated: October 3, 2024

KRAW LAW GROUP

By: /s/ Katherine McDonough
KATHERINE MCDONOUGH
*Counsel for Plaintiffs*

# Exhibit A

WGAW WRITERS GUILD OF AMERICA WEST    WRITERS GUILD of AMERICA EAST

**-LETTER OF ADHERENCE-**

# LETTER OF ADHERENCE TO THE 2020 WGA THEATRICAL AND TELEVISION BASIC AGREEMENT

The undersigned company ("Company") and the Writers Guild of America West, Inc., on behalf of itself and its affiliate Writers Guild of America, East, Inc. (collectively "WGA" or "Guild"), accept and agree to abide by all terms and conditions of the 2020 WGA Theatrical and Television Basic Agreement ("2020 MBA") as negotiated between the WGA and **(PLEASE CHECK ONE):**

☒ **the Alliance of Motion Picture and Television Producers ("AMPTP")**

☐ **the production companies of ABC, CBS and NBC ("Networks")**

The 2020 MBA is in effect from May 2, 2020 through and including May 1, 2023. The terms and conditions of the 2020 MBA shall apply retroactively to any employment of writers or purchase of literary material during this term but preceding the execution of this letter of adherence. A Summary containing the terms and conditions is enclosed. The economic and other terms of the MBAs negotiated with the AMPTP and the Networks are the same with three exceptions. The three exceptions, which relate to long-form television, are noted in an Addendum at the end of the Summary. Regardless of which version of the 2020 MBA is selected, the Company executing this Letter of Adherence shall also be bound to the terms and conditions of Attachment 1 hereto, which amends the MBA in certain respects.

Anything to the contrary in the 2020 MBA notwithstanding, the Company shall remain primarily liable for all the terms and conditions of the 2020 MBA in the event the undersigned should sell, transfer or assign any of its rights as set forth and described in the 2020 MBA.

The Guild may in its discretion require at any time reasonable financial assurances that writers will receive all compensation (including but not limited to residuals and other forms of contingent compensation) to which they are entitled under the MBA or their individual agreements with company. Upon the Guild's written request, the Company shall promptly provide such assurances as are acceptable to the Guild in the form of a lien, bond, cash deposit or escrow, security agreement and/or such other type acceptable to the Guild. In the event the Company fails to provide such assurances, the Guild shall have the right to withhold the services of writers until such assurances are provided.

The Pension Plan and Health Fund to which contributions are required by the 2020 MBA are separate entities and will independently determine whether your company may participate in these trusts. Should the Company be acknowledged as a participating employer, only contributions for bona fide covered employment will be accepted by them.

A photocopy, facsimile, electronic or other copy of this agreement shall have the same effect for all purposes as a signed original.

**AGREED TO AND ACCEPTED**

Newirth, LLC
FULL LEGAL NAME OF COMPANY

By: [signature]
SIGNATURE

Name: Andreas John
PLEASE PRINT CLEARLY OR TYPE

Title: Partner
PLEASE PRINT CLEARLY OR TYPE

Email: andreas@willdreamlyarts.com
PLEASE PRINT CLEARLY OR TYPE

Date: 5/7/2021

**WRITERS GUILD OF AMERICA WEST, INC.**
on behalf of itself and its affiliate
**WRITERS GUILD OF AMERICA, EAST, INC.**

By: DocuSigned by: DT Matias for
C7667653BD0C474...
DAVID YOUNG, Executive Director

Date: 6/4/2021

2020 WGAW Signatory Application

**ATTACHMENT 1, LETTER OF ADHERENCE TO THE 2020 WGA THEATRICAL & TELEVISION BASIC AGREEMENT**

1. Substitute the following expanded list of Los Angeles arbitrators in Articles 11.C.2.e.(3), 11.E.4., 11.F.5.a.(7), 11.G.5. and Theatrical Schedule A, paragraph 26.a.(3)(e):

LOS ANGELES

Sara Adler
Norman Brand
Mark Burstein
Christopher Cameron
Douglas Collins
Paul E. Crost
Dixon Dern
Greg Derin
Catherine Fisk
Edna Francis
William Gould IV
Joel Grossman
Fredric R. Horowitz
Najeeb Khoury
Fred Kuperberg
Ken Perea
Michael Rappaport
Sol Rosenthal
Robert Steinberg
Jan Stiglitz
Gail Migdal Title

2. Amend Section 2.a.(1) and (2) of Appendix C of the 2017 MBA as follows:

"2. The rates and other conditions of employment or for the acquisition of literary material from a professional writer applicable to programs made for basic cable shall be as follows:

a. The following shall apply except with respect to high budget dramatic programs, as defined in subparagraph 2.b. below:

(1) The Company may elect, with respect to all other programs, including Appendix A programs, to apply the provisions of subparagraph 2.b. to the employment of a writer. Otherwise, either the Guild or Company may notify the other that it wishes to bargain concerning rates and other conditions of employment to be applicable to the employment of writers or the acquisition of literary material for programs of the types heretofore traditionally produced for free television pursuant to any WGA Basic Agreement, produced primarily for the basic cable market. The parties agree to commence such negotiations within thirty (30) days of receipt of such notice. If no agreement is reached within sixty (60) days after bargaining has commenced, the Guild may, upon written notice to Company, instruct its members to refuse to render services with respect to such programs.

(2) Until such time as the Guild instructs its members to refuse to render services with respect to such programs produced pursuant to subparagraph 2.a.(1) above, the employment of a writer for such an entertainment program (herein "Program") produced within the metropolitan areas of Los Angeles or New York, or of a writer hired within such areas for a Program to be produced within the United States, shall be subject to: (a) the Guild Shop provisions of this Agreement; (b) Articles 10-12 (grievance and arbitration); (c) Article 17, the Pension Plan and Health Fund provisions of this Agreement; provided that in no event shall the Company be required to make pension and health contributions in an amount greater than would be required if the Program were made for free television; (d) the requirement that the Company tender a written contract of employment to the writer within ten (10) days following the commencement of his or her employment and the requirement that the Company send to the Guild a copy of any writer's executed contract for employment on a Program within one (1) week after receipt by Company of such executed contract; and (e) the requirement that the Company

notify the Guild of its intention to produce such a program at least ninety (90) days prior to commencement by any writer of writing services on the Program provided, however, that with respect to material written to be part of such a Program, this subparagraph 2.a.(2) shall apply to continuity material only when such material is written to be a part of a Program originally produced for exhibition on basic cable (as distinguished from a program originally produced for exhibition in another medium). If the Company fails to provide timely notice of its intention to produce such Program as required in this subparagraph, then the provisions of subparagraph (1) above shall not apply and the Guild may, not earlier than twenty-four (24) hours after written notice to the Company, instruct its members to refuse to render services with respect to such Program.

(3) The employment of a writer for a dramatic program one (1) hour or longer which is to be produced in the United States for basic cable television under a budget less than (i) $1,200,000 for a one (1) hour program; (ii) $1,500,000 for a ninety (90) minute program; or (iii) $1,500,000 for a two (2) hour or longer program (other than one covered by Paragraph 2.a.(2) above) shall be subject to the requirement that the Company notify the Guild at least ninety (90) days prior to commencement by any writer of writing services on the program."

3. If a Company elects to submit a Notice of Tentative Writing Credits to the Guild via email, it shall use the following email addresses: theatrical motion pictures: **THEATRICAL-NTWC@WGA.ORG** television motion pictures: **TV-NTWC@WGA.ORG**; and new media motion pictures: **NEWMEDIA-NTWC@WGA.ORG**. Notices may be sent to a participating writer by email only if the writer's representative is also given email notice and the writer's personal services contract (or an amendment thereto) contains all of the following: (1) the writer's express agreement to receive notices by email; (2) the writer's email address; and (3) the email address of at least one of the writer's representatives. The email address of the writer's representative must be an individual address, not a general company mailbox, and must appear on the face of the notice.

4. Company agrees that all writing credits for programs written pursuant to the Sideletter on Literary Material Written for New Media shall be subject to the television credits schedule applicable to the program type.

5. Company and the WGA agree that Article 11.A.6.a. of the MBA shall be amended to allow the WGA and Company to send all written notices commencing a grievance or arbitration or alleging a cross-claim to be sent via email. All such notices sent by WGA to the Company shall be sent to the email address(es) provided by Company in the above referenced Letter of Adherence and any accompanying Letter of Guaranty. All such email notices sent by Company to the WGA shall be sent to **Legal@wga.org**.

6. Company and the WGA agree that Article 11.A.3 of the MBA shall be amended to allow arbitrators, upon a showing of good cause based on pandemic-related safety concerns, to hold arbitration hearings remotely via teleconference when requested to do so by either party.

# Exhibit B

WGAW WRITERS GUILD OF AMERICA WEST

WRITERS GUILD of AMERICA EAST

**-GUARANTEE AGREEMENT-**

## GUARANTEE AGREEMENT UNDER THE 2020 WGA THEATRICAL AND TELEVISION BASIC AGREEMENT

Reference is made to the Letter of Adherence to the 2020 Writers Guild of America Theatrical and Television Basic Agreement ("2020 MBA") between **Newirth, LLC** (herein after "Company"), and Writers Guild of America, West, Inc. on behalf of itself and Writers Guild of America, East, Inc. (jointly "WGA") which is entered into concurrently with this guarantee. To induce the WGA to sign the Letter of Adherence, the undersigned agrees to the following: Guarantor agrees to guarantee performance of the 2020 MBA by Company.

Guarantor agrees to assume all obligations of Company under each employment agreement for writing services and option or purchase agreement for literary material entered into at any time during the term of the 2020 MBA.

Guarantor agrees to assume all obligations of the 2020 MBA pertaining to such employment and option or purchase agreement and specifically agrees to be bound by, and a party to, any grievance and/or arbitration under the 2020 MBA, should a dispute between a writer and/or WGA and Company arise. Guarantor and Company shall be deemed jointly and severally liable under any grievance or arbitration award or settlement.

Guarantor agrees that service upon Company pursuant to the 2020 MBA shall constitute service upon the undersigned.

Nothing contained in this agreement shall be construed to relieve Company from its obligations under such employment and option or purchase agreement or its obligations under the 2020 MBA.

A photocopy, facsimile, electronic or other copy of this agreement shall have the same effect for all purposes as a signed original.

**AGREED TO AND ACCEPTED**

**Will Dreamly Entertainment, LLC**
NAME OF GUARANTOR

By: [signature]
SIGNATURE

Name: **Andreas John**
PLEASE PRINT CLEARLY OR TYPE

Title: **Partner**
PLEASE PRINT CLEARLY OR TYPE

Address: **409 E Coeur d'Alene Ave., Ste B, CdA, ID 83814**
NO P.O. BOXES OR EQUIVALENT

Email: **andreas@willdreamlyarts.com**

Date **5/10/2020**